**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERNEST BENJAMIN**<br>**Plaintiff,**<br><br>**v.**<br><br>**LYNNE M. ABRAHAM, DISTRICT ATTORNEY OF THE COMMONWEALTH OF PENNSYLVANIA, PHILADELPHIA COUNTY**<br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br>**NO. 06-5561** |

**DuBOIS, J.** **MARCH 15, 2007**

**M E M O R A N D U M**

## I. INTRODUCTION

Plaintiff Ernest Benjamin is incarcerated in the State Correctional Institution (SCI) Dallas, in Dallas, Pennsylvania. On January 22, 2007, plaintiff filed a *pro se* Action for Declaratory Judgment Act Declaring Any Evidence Commonwealth Obtained as a Result of Warrantless Search and Seizure Unconstitutional (the "Declaratory Judgment Motion"). Presently before the Court is defendant's Motion to Dismiss the *pro se* Declaratory Judgment Motion. For the reasons set forth below, the Motion to Dismiss is granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A detailed factual and procedural history of this case is set forth in the July 31, 1995 opinion of the Superior Court of Pennsylvania (the "Superior Court") denying plaintiff's direct appeal. Commonwealth v. Benjamin, No. 1416 Philadelphia 1994, Memorandum (Pa. Super. Ct. July 31, 1995). The Court quotes at length from this factual and procedural history, which is

necessary to explain its ruling.[1]

> On February 3, 1993, appellant [Benjamin] and Charles Pittman spent the evening consuming drugs and alcohol. Shortly after midnight, they both entered a deli at 7701 Ogontz Avenue where Mr. Pittman purchased food and cigarettes. A surveillance video camera monitored the interior of the deli. While Mr. Pittman was waiting for his items, appellant exited the deli and stood by the front window of the deli. From inside the store, one of the deli employees saw the appellant through the window move a black hand gun into his jacket pocket while he was waiting outside the deli. When Mr. Pittman purchased his items, he displayed a bundle of cash. He left the store and rejoined appellant who was still waiting outside.
>
> Less than a block from the deli, appellant shot Mr. Pittman with a bullet to his head. A witness, who heard the gunshot, looked outside his apartment window and saw the silhouetted figure of appellant pacing around the victim's body. The witness then heard the discharge of the second bullet which entered the victim's face. Appellant then removed the cash from the victim's pockets and the victim's leather coat. The deli employee, who had earlier recognized the appellant, was just finishing his shift and leaving the store when he heard the two gun shots.
>
> On the morning of February 6, 1993, law enforcement officers surveyed the appellant's home while they were waiting for the arrival of a search warrant. The officers observed appellant's sister, Laurie Benjamin, exit the residence, start the ignition of a vehicle and reenter the residence. At this time the police learned that the warrant had been approved. The officers, concerned that their surveillance had been noticed, moved to secure the entrances of the home. They knocked on the front door, identified themselves to the earlier observed female, asked to speak with her inside the home and were permitted to do so. The officers asked her to gather any other residents in the living room. Shortly thereafter, appellant came down from the second floor.
>
> Approximately ten minutes later, other officers entered the home with the authorized search warrant. The officers told appellant that they were investigating the murder of Mr. Pittman and asked if he would accompany them to headquarters. He agreed to do so. Appellant was not handcuffed when he was placed in the back seat of an unmarked police car. As the car was leaving the area, appellant's father walked up to the car and appellant rolled down the window to tell his father that he was going to police headquarters.

---

[1] "[I]n a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." Gould Electronics Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); see also infra § III(A) (describing the standard of review).

> At headquarters, appellant was placed in an unlocked room with the door open. After officers twice informed appellant of his constitutional rights, he waived them and agreed to answer questions. He was twice shown the video tape from the deli on the night that he and the victim entered the store. Appellant then gave a statement in which he admitted that he killed the victim for no apparent reason. Appellant, when asked to review the statement for possible errors, made typographic changes to the statement.

Id. at 1-3. On February 7, 1993, plaintiff was arrested and charged with second-degree murder, robbery, and related charges. Commonwealth v. Benjamin, C.P. No. 9303-3272.

Prior to trial, plaintiff filed a motion to suppress his February 6, 1993 confession.[2] The Honorable Carolyn Engel Temin of the Court of Common Pleas of Philadelphia, Pennsylvania (the "Court of Common Pleas") held a hearing on plaintiff's motion to suppress on January 12, 1994. Judge Temin denied the motion, and ruled as follows:

> I have carefully considered the testimony in this case, and I find that the facts are in accordance with the testimony of the Commonwealth witnesses, whose testimony was clear, concise, and uncontradicted on cross-examination. I find that there is no evidence to know what the defendant ingested, if anything, on the date that he was taken down to make a statement; that the defendant was not under arrest at the time that he was originally taken to the Police Administration Building.
>
> I find as a fact that whether or not the defendant had ingested a controlled substance on the morning that he gave the statement, he was not suffering from any undo symptoms of confusion, slurred speech, blurred vision or anything else as a result of the ingestion.
>
> I conclude as a matter of law, that the Miranda warnings were properly given, that there was no violation of the Dunkin [Duncan] Rule,[3] and that the statement was voluntary. The motion to suppress the statement is denied.

---

[2] Plaintiff alleges that he moved to suppress the confession on Fourth Amendment grounds. Action for Declaratory J. at 11. A copy of the motion to suppress was not appended to the *pro se* Declaratory Judgment Motion or the Motion to Dismiss.

[3] See Commonwealth v. Duncan, 514 Pa. 395 (Pa. 1987) (requiring suppression of confession obtained more than six hours after arrest and before arraignment), overruled by Commonwealth v. Perez, 577 Pa. 360 (Pa. 2004).

N.T. January 12, 1994, 132-33.

On March 31, 1994, after a bench trial before Judge Temin, plaintiff was convicted of second-degree murder, voluntary manslaughter, robbery, and possessing instruments of crime. Commonwealth v. Benjamin, C.P. No. 9303-3272. Plaintiff was sentenced to, *inter alia*, life imprisonment on the murder charge. Id.

Plaintiff filed a direct appeal of his conviction and sentence in the Superior Court. Benjamin, No. 1416 Philadelphia 1994, at 1. At issue on direct appeal were two questions: (1) whether the Court of Common Pleas erred "when it denied appellant's motion to suppress the confession, which was the product of an illegal search and seizure," and (2) whether the trial court erred "when it denied appellant's motion to suppress the confession when the confession appellant gave was not a knowing and voluntary one." Id. at 3.

By Memorandum dated July 31, 1995, the Superior Court concluded that Judge Temin properly denied plaintiff's motion to suppress and affirmed plaintiff's conviction and sentence. Specifically, the Superior Court held as follows:

> Appellant first claims that his confession was the product of an illegal arrest for the following reasons: (1) his entire family in the residence was under arrest and seizure, (2) the police failed to 'knock and announce' before entering the home and (3) he was under arrest when he was placed in the police car. We find these arguments to be meritless.

Id. at 4. In addition, the Superior Court held that plaintiff "voluntarily and knowingly waived his constitutional rights" before making the February 6, 1993 confession. Id. at 6-7.

On July 10, 2006, plaintiff filed a petition for writ of mandamus in the Supreme Court of Pennsylvania. Commonwealth v. Benjamin, No. 97 EM 2006. On August 30, 2006 the Supreme Court of Pennsylvania denied the petition in a *per curiam* opinion. Id. Plaintiff alleges that the

petition for writ of mandamus was styled as an "action for declaratory judgment" and raised Fourth Amendment and Due Process claims. Action for Declaratory J. at 6.[4]

On January 22, 2007, plaintiff filed a *pro se* Declaratory Judgment Motion in this Court. In the *pro se* Declaratory Judgment Motion, plaintiff raises two grounds for relief.[5] First, plaintiff seeks a declaration that his constitutional rights under the Fourth and Fourteenth Amendments were violated by: (a) the warrantless containment of plaintiff in his home by police outside the home; (b) the warrantless seizure of plaintiff in his living room; (c) the warrantless search of plaintiff's home; (d) the arrest of plaintiff without probable cause; (e) the admission at trial of plaintiff's confession, which was the product of an illegal search, seizure and arrest; and (f) the admission at trial of plaintiff's involuntary confession. Action for Declaratory J. at 4-5.[6] Second, plaintiff seeks a declaration that the Court of Common Pleas lacked subject matter jurisdiction over plaintiff's criminal prosecution. Id. at 5.

On February 20, 2007, defendant filed the instant Motion to Dismiss the *pro se* Declaratory Judgment Motion. For the reasons that follow, the Court concludes that plaintiff's

---

[4] A copy of the petition for writ of mandamus was not appended to the *pro se* Declaratory Judgment Motion or the Motion to Dismiss.

[5] Plaintiff filed the instant Declaratory Judgment Motion *pro se*. Accordingly, the Court will construe plaintiff's arguments liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

[6] Because plaintiff challenges the voluntariness of his confession, the Court construes the *pro se* Declaratory Judgment Motion as also alleging a claim under the Fifth and Fourteenth Amendments. See Missouri v. Seibert, 542 U.S. 600, 607 (2004) (describing the unification of "the Fifth and Fourteenth Amendment voluntariness tests" for admissibility of confessions); United States v. Swint, 15 F.3d 286, 289 (3d Cir. 1994) (same).

constitutional claims are barred by the Rooker-Feldman[7] doctrine.[8] The Court further concludes that plaintiff's jurisdictional claim lacks merit. Accordingly, the Motion to Dismiss is granted.

## III. STANDARD OF REVIEW

Defendant's Rooker-Feldman argument addresses the issue of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), a court may dismiss a complaint for "lack of jurisdiction over the subject matter . . ." Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of showing that the case is properly before the Court at all stages of the litigation. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993).

"In evaluating a Rule 12(b)(1) motion, the Court first must determine whether the motion attacks the complaint on its face or on its facts." McCurdy v. Esmonde, 2003 WL 223412 *4 (E.D. Pa. Jan. 30 2003). "A facial challenge under Rule 12(b)(1) argues that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations." Id. (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1250, at 212-18 (2d ed. 1990)). In contrast, an "in fact" challenge under Rule 12(b)(1) disputes "the existence of certain jurisdictional facts alleged by the plaintiffs." Carpet Group Intern. v.

---

[7] The Rooker-Feldman doctrine stems from two Supreme Court cases decided sixty years apart. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

[8] Because the Court grants defendant's Motion to Dismiss as to plaintiff's constitutional claims under the Rooker-Feldman doctrine, the Court does not reach defendant's additional arguments: (1) that plaintiff fails to state a claim upon which relief can be granted; (2) that plaintiff fails to allege a "case or controversy" as required by Article III of the Constitution; and (3) that plaintiff's constitutional claims are not cognizable as an action for declaratory relief under Heck v. Humphrey, 512 U.S. 477 (1994). In addition, the Court does not consider the timeliness of the *pro se* Declaratory Judgment Motion–an issue that defendant does not raise in the Motion to Dismiss.

Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000).

In a facial challenge, a Court "must consider the allegations of the complaint as true," as under Federal Rule of Civil Procedure 12(b)(6).  Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  However, "in a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." Gould Electronics Inc., 220 F.3d at 178 (citing Mortensen, 549 F.2d at 891).

In this case, defendant's Motion to Dismiss is based upon the Rooker-Feldman doctrine and attacks the *pro se* Declaratory Judgment Motion on its facts.  See Jiricko v. Bennett, Bricklin & Satlzburg, LLP, 321 F. Supp. 2d 636, 640 (E.D. Pa. 2004) (holding that Rule 12(b)(1) motion challenging subject matter jurisdiction under Rooker-Feldman is an "in fact" jurisdictional challenge); McCurdy, 2003 WL at *4 (same).  The issue before the Court is whether the facts underlying the *pro se* Declaratory Judgment Motion were "actually litigated" or are "inextricably intertwined" with a prior state court judgment against plaintiff.  Thus, this Court may consider evidence outside the pleadings to determine whether the Court has jurisdiction over plaintiff's claims.

## IV.    DISCUSSION: PLAINTIFF'S CONSTITUTIONAL CLAIMS

### A.    Legal Standard: The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine makes clear that the lower federal courts do not have jurisdiction to review judgments of state courts under particular circumstances.  Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).  Specifically, the lower federal courts lack jurisdiction over " 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments.' " Lance v. Dennis, 126 S.Ct. 1198, 1201 (2006) (per curiam) (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)).

However, the Supreme Court has cautioned that Rooker-Feldman is a "narrow doctrine." Id. at 1201. The lower federal courts are not "divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Turner, 449 F.3d at 547.

The Third Circuit has interpreted the Rooker-Feldman doctrine, after Exxon Mobil, as a doctrine that bars the lower federal courts "from entertaining an action . . . if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006). Accordingly, the Rooker-Feldman doctrine creates a jurisdictional bar where the federal claim was "actually litigated" in state court or where the federal claim is "inextricably intertwined" with a previous state court judgment. Id. at 192-93; see also Keckeissen v. Commonwealth of Pennsylvania, 2005 WL 3508624, *2 (E.D. Pa. Dec. 22, 2005) (quoting Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003)).

**B.     Plaintiff's Constitutional Claims Are Barred by the Rooker-Feldman Doctrine**

Plaintiff in this case was the losing party in two previous state court judgments. Specifically, the Court of Common Pleas denied plaintiff's motion to suppress on January 12, 1994, and the Superior Court denied plaintiff's direct appeal on July 31, 1995.[9] Thereafter,

---

[9] In addition, the Supreme Court of Pennsylvania denied plaintiff's petition for writ of mandamus on August 30, 2006.

plaintiff filed a *pro se* Declaratory Judgment Motion in this Court.  In the instant Motion to Dismiss, defendant asserts that the relief requested in the *pro se* Declaratory Judgment Motion would effectively reverse the prior state court judgments against plaintiff, in violation of the Rooker-Feldman doctrine.  This Court agrees.

In the *pro se* Declaratory Judgment Motion, plaintiff seeks a declaration from this Court that his constitutional rights were violated by: (a) the warrantless containment of plaintiff in his home by police outside the home; (b) the warrantless seizure of plaintiff in his living room; (c) the warrantless search of plaintiff's home; (d) the arrest of plaintiff without probable cause; (e) the admission at trial of plaintiff's confession, which was the product of an illegal search, seizure and arrest; and (f) the admission at trial of plaintiff's involuntary confession.  Action for Declaratory J. at 4-5.  The Court concludes that each of these issues was "actually litigated" by the Superior Court on direct appeal or is "inexplicably intertwined" with the judgment of the Superior Court.  The Court addresses each issue in turn.

First, in the *pro se* Declaratory Judgment Motion, plaintiff asserts that "police officers, without probable cause to do so, stationed themselves outside the plaintiff's home, to make sure that no one entered or left."  Id. at 4.  This claim is "inextricably intertwined" with the Superior Court's judgment.  Granting plaintiff's requested relief would effectively reverse the judgment of the Superior Court that plaintiff's confession was not "the product of an illegal search and seizure."  Benjamin, No. 1416 Philadelphia 1994, at 3; see also O'Rourke v. Krapf, 2002 WL 32348933, *6, 6 n.6 (E.D. Pa. Sept. 20, 2002) (holding that state court judgment that seizure was justified as a search incident to a lawful arrest was "inextricably intertwined" with issue whether officers had probable cause to arrest).

Second, in the *pro se* Declaratory Judgment Motion, plaintiff asserts that police officers unconstitutionally "restricted plaintiff [sic] movements to the home living room area." Action for Declaratory J. at 4. This claim was "actually litigated" by the Superior Court. On direct appeal, the Superior Court considered plaintiff's claim that "his entire family in the residence was under arrest and seizure" in the living room of his home. The Superior Court explicitly held that this claim was "meritless." Benjamin, No. 1416 Philadelphia 1994, at 4.

Third, plaintiff asserts that police officers unconstitutionally "encroach[ed] on the sanctity of plaintiff's home and privacies of life" by conducting an allegedly warrantless search of the home. Action for Declaratory J. at 4. This claim was "actually litigated" in state court. On direct appeal, the Superior Court considered the lawfulness of the officers' entry into plaintiff's home, and held that this entry was lawful, as follows:

> The suppression testimony shows that when the officers knocked on the door, appellant's sister, Laurie Benjamin answered the knock; the officers identified themselves, and asked to enter and were permitted to do so by her. See Commonwealth v. McCullum, 529 Pa. 117, 602 A.2d 313 (1992) (law enforcement entry into a house with consent vitiates later complaints about the entry).

Id.

Fourth, plaintiff asserts that he was arrested without probable cause when he was "taken . . . from his home and place[d] in the rear of a police vehicle from which he could not exist [sic]." Action for Declaratory J. at 4. This claim was "actually litigated" by the Superior Court. On direct appeal, the Superior Court explicitly held: "We further reject appellant's assertion that he was under arrest when he was placed into an unmarked police car" and transported to police headquarters. Benjamin, No. 1416 Philadelphia 1994, at 5.

Fifth, plaintiff asserts that his constitutional rights were violated by the admission at trial

of his confession, which was allegedly "the product of an illegal arrest and an unreasonable search and seizure." Action for Declaratory J. at 4. This claim was "actually litigated" by the Superior Court. The Superior Court held that plaintiff's confession was not the product of an illegal search, seizure, or arrest, and was properly admitted at trial. Id. at 4-5.

Finally, plaintiff asserts that his constitutional rights were violated by the admission at trial of his February 6, 1993 confession, which was allegedly involuntary. Again, this claim was "actually litigated" in state court. On direct appeal, the Superior Court held that plaintiff "voluntarily and knowingly waived his constitutional rights" before making his confession. Id. at 6-7. In addition, Judge Temin explicitly ruled on this issue in her judgment denying plaintiff's motion to suppress. N.T. January 12, 1994, at 133 ("I conclude as a matter of law, that . . . the statement was voluntary.").

Thus, the Court concludes that all of plaintiff's constitutional claims are barred by the Rooker-Feldman doctrine. Accordingly, defendant's Motion to Dismiss is granted and plaintiff's constitutional claims are dismissed.[10]

---

[10] In his *pro se* Response to defendant's Motion to Dismiss, plaintiff argues that the Rooker-Feldman doctrine does not apply to the *pro se* Declaratory Judgment Motion because this Court has "equity jurisdiction" under Article III of the Constitution. Reply at 3. Specifically, plaintiff argues:

> [W]hen a petitioner directly under Article III [sic] . . . a District Court is not constrained by limitations under Rooker-Feldman doctrine, therefore, the defendant's argument, simply do [sic] not apply to motions made under Article III and the plaintiff is entitled to directly invoke the District Court's inherent equitable powers, just as parties did long before, contrary to the defendant's assertions the District Court does have subject matter jurisdiction . . .

Id.

In a liberal reading of the *pro se* Response, the Court concludes that plaintiff is asserting (1) that this Court has jurisdiction under Article III of the Constitution without a separate statutory basis for jurisdiction; and (2) that because the Court has jurisdiction under Article III,

## V. DISCUSSION: PLAINTIFF'S JURISDICTIONAL CLAIM

Separate and apart from his constitutional claims over which this Court lacks jurisdiction under the Rooker-Feldman doctrine, plaintiff asserts in his *pro se* Declaratory Judgment Motion that the Court of Common Pleas lacked subject matter jurisdiction over plaintiff's criminal prosecution. Action for Declaratory J. at 5. This claim, which does not implicate the Rooker-Feldman doctrine, is wholly without merit.

The Pennsylvania courts of common pleas are courts of general subject matter jurisdiction. See Pa. Const. Art. V § 5(b) (granting "unlimited original jurisdiction" to the courts of common pleas); 42 Pa.C.S. § 931(a) (same). Accordingly, the "Pennsylvania courts of common pleas are vested with unlimited original jurisdiction to try a murder case." Byrd v. Parris, 1999 WL 895647, *3 (E.D. Pa. Oct. 1999); see also Commonwealth v. Little, 455 Pa. 163, 168 (Pa. 1974).

Thus, defendant's Motion to Dismiss is granted as to plaintiff's jurisdictional claim.

## VI. CONCLUSION

---

the Rooker-Feldman doctrine does not apply to this case.

This argument is wholly without merit. Under Article III § 1 of the Constitution, Congress may decide whether or not to establish the lower federal courts. Because Congress has this right, Congress may also "withhold from any court of its creation jurisdiction of any of the enumerated controversies." Sheldon v. Sill, 49 U.S. 441, 449 (1850). Accordingly, the lower federal courts "can have no jurisdiction but such as the statute confers." Id.

In other words, Article III jurisdiction is necessary, but not sufficient to vest the lower federal courts with subject matter jurisdiction. A federal court may adjudicate a case only if the court has constitutional jurisdiction under Article III *and* jurisdiction under a federal statute. West Penn Power Co. v. Train, 522 F.2d 302, 314 (3d Cir. 1975). Thus, plaintiff's Article III jurisdictional argument is rejected.

For the foregoing reasons, the Court concludes that plaintiff's constitutional claims are barred by the Rooker-Feldman doctrine. The Court further concludes that plaintiff's challenge to the jurisdiction of the Court of Common Pleas is without merit. Thus, defendant's Motion to Dismiss is granted, and plaintiff's *pro se* Declaratory Judgment Motion is dismissed in part and denied in part.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERNEST BENJAMIN**<br>**Plaintiff,**<br><br>**v.**<br><br>**LYNNE M. ABRAHAM, DISTRICT ATTORNEY OF THE COMMONWEALTH OF PENNSYLVANIA, PHILADELPHIA COUNTY**<br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br>**NO. 06-5561** |

**O R D E R**

**AND NOW**, this 15th day of March, 2007, upon consideration of plaintiff's *pro se* Action for Declaratory Judgment Act Declaring Any Evidence Commonwealth Obtained as a Result of Warrantless Search and Seizure Unconstitutional (Document No. 3, filed January 22, 2007) (the "*pro se* Declaratory Judgment Motion"); Defendant's Motion to Dismiss Plaintiff's Complaint (Document No. 5, filed February 20, 2007); and plaintiff's *pro se* Letter in Response to Defendant's Motion to Dismiss Plaintiff's Complaint (Document No. 7, filed February 27, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED**, as follows:

1. Defendant's Motion to Dismiss Plaintiff's Complaint is **GRANTED**;

2. That part of plaintiff's *pro se* Declaratory Judgment Motion in which plaintiff seeks a declaration that his constitutional rights were violated is **DISMISSED FOR LACK OF JURISDICTION**;

3. That part of plaintiff's *pro se* Declaratory Judgment Motion in which plaintiff seeks a declaration that the Court of Common Pleas of Philadelphia, Pennsylvania lacked jurisdiction over his criminal case is **DENIED**; and

4. Plaintiff's *pro se* Declaratory Judgment Motion is **DENIED** in all other respects.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**

**JAN E. DUBOIS, J.**